**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Guadalupe Guerrero,<br><br>          Plaintiff,<br><br>v.<br><br>United States of America,<br><br>          Defendant. | No. CV-12-00370-TUC-JAS<br><br>**ORDER** |

Pending before the Court are the parties' motions in limine. For the reasons stated below, the motions are denied.[1]

**BACKGROUND**

This is a Federal Tort Claims Act case against the United States. Plaintiff is the mother of decedent Carlos LaMadrid.

On March 21, 2011, the Douglas Police Department received an anonymous tip that a Chevrolet Avalanche was transporting marijuana. Upon observing an Avalanche and believing it to be the one described in the tip, officers from the Douglas Police Department began pursuing the vehicle and attempted to get the driver to pull over. The

---

[1] As the Court finds that oral argument would not be helpful in resolving these motions, oral argument is denied.

driver of the Avalanche did not pull over and eventually made his way to the international border fence.

When the Avalanche arrived at the border fence, Border Patrol Agent Lucas Tidwell responded to the scene. The Avalanche came to a stop near the border fence, and two individuals jumped out of the car and attempted to flee. The driver was 19-year old Carlos LaMadrid, and the passenger was a 17-year old male. LaMadrid and his companion fled their vehicle and tried to climb a ladder that was propped against the border. At the top of the border fence was a man who began throwing large rocks at Agent Tidwell apparently to aid the escape of the two suspects. In response, Agent Tidwell began firing his weapon and several of the shots struck LaMadrid on the back side of his body as he was climbing the ladder. According to Agent Tidwell, he was firing his weapon at the man positioned at the top of the border fence who was throwing rocks at him. Tidwell claims that he was in fear for his life, and that he was acting in self-defense; unfortunately, as LaMadrid was ascending the ladder, he entered into Tidwell's line of fire and was inadvertently struck and killed. Plaintiffs argue that as LaMadrid presented no danger as he was climbing a ladder with his back facing Tidwell, the fatal shots to LaMadrid's back were either intentional, or were otherwise reckless and unjustified such that the Government is liable for LaMadrid's death.

## STANDARD OF REVIEW

### General Standards of Admissibility

Fed. R. Evid. 402 provides: "Relevant evidence is admissible unless any of the following provides otherwise: • the United States Constitution; • a federal statute; • these

rules; or • other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible."  Fed. R. Evid. 401 defines relevant evidence as follows: "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 403 provides that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

### Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *See Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).[2]  A trial court's gatekeeper duty requires two separate inquiries:

---

[2] Unless otherwise noted by the Court, internal quotes and citations have been omitted when quoting and citing cases throughout this Order.

the witness must be qualified to offer the opinions he or she is espousing and the proponent of the witness bears the burden of proving by a preponderance of the evidence that its expert's opinions are both relevant and reliable. *See Kumho Tire*, 526 U.S. at 141, 152; *Bourjaily v. United States,* 483 U.S. 171, 175 (1987). As emphasized in *Kumho Tire,* "the test of reliability is flexible . . . the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.,* 526 U.S. at 141-42. An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than unreliable *ipse dixit* guesswork. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered"); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (affirming the exclusion of the *ipse dixit* testimony of plaintiff's expert that was not based upon objective, verifiable evidence).

Rule 702's second prong concerns relevancy, or "fit." *Daubert*, 509 U.S. at 591. The specialized knowledge must be connected to the question at issue. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir.1994), *cert. denied sub nom.*, *General Electric Company v. Ingram*, 513 U.S. 1190 (1995). The trial court "must ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315. "[T]he standard for fit is higher than bare relevance." *In re Paoli*, 35 F.3d at 745. Federal judges must exclude proffered expert evidence under Rule 702 unless they are convinced that it

speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury. *See Daubert II*, 43 F.3d at 1321.

However, the Court's *Daubert* gatekeeper function does not replace the role of the fact finder.[3] Indeed, the district court is not to "evaluate the credibility of opposing experts and the persuasiveness of competing scientific studies[.]" *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003), *quoting Ambrosini v. Labarraque*, 101 F.3d 129, 141 (D.C.Cir. 1996). The fact finder is entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which the expert relied were accurate. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (11th Cir. 2002). As such, the Ninth Circuit has emphasized:

> Judges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert. The *Daubert* duty is to judge the reasoning used in forming an expert conclusion. The test is whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony. In arriving at a conclusion, the fact finder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should not preclude the admission of the expert's testimony–they go to the weight, not

---

[3] The Court recognizes that this case will proceed as a bench trial, and the Court will therefore serve as the fact finder in this case. *See generally Dedmore v. United States*, 322 F.2d 938, 946 (9th Cir.1963) ("[I]t is to be presumed, absent a showing to the contrary, that the District Judge considered only material and competent evidence in arriving at his findings . . ."); *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) ("[In] a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial."); *Harris v. Rivera*, 454 U.S. 339, 465 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. It is equally routine for them to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as factfinders. We are not persuaded that an apparent inconsistency in a trial judge's verdict gives rise to an inference of irregularity in his finding[s] . . . that is sufficiently strong to overcome the well-established presumption that the judge adhered to basic rules of procedure.").

the admissibility.

*Kennedy v. Collagen Corporation*, 161 F.3d 1226, 1230-31 (9th Cir. 1998); *see also U.S. v. Rahm*, 993 F.2d 1405, 1410, 1412 (9th Cir. 1993)(emphasizing that "[c]ertainty is an unreasonable expectation in the realm of expert opinion. [An expert's] use of the conditional 'could' in expressing her conclusion is neither unusual nor disqualifying as to her testimony.  In any area of science . . . expecting an expert to reach a conclusion without the slightest doubt as to its accuracy is exceedingly unrealistic.  Experts ordinarily deal in probabilities, in 'coulds' and 'mights' . . . It is the rare expert who is willing to opine conclusively about a past occurrence.").

**DISCUSSION**

**Exclusion of Experts**

Both Plaintiff and Defendant have filed motions to exclude the other party's expert pertaining to the reasonableness of the use of deadly force in this case. Defendant argues that Plaintiff's expert (Marty Fuentes) is not qualified to offer an expert opinion on the use of deadly force in this case as Fuentes's expertise is in accident reconstruction, and his previous expert testimony has been only in the area of accident reconstruction. Likewise, Plaintiff argues that Defendant's expert (Joe Callanan) should not be permitted to offer an opinion as it is without an adequate basis; Plaintiff primarily argues that Callanan's expert opinion is simply based on input he received from Agent Tidwell, and that Callanan just parrots what Tidwell provided to conclude that the shooting was reasonable under the circumstances as described by Tidwell.  Thus, both parties argue that the opposing parties' expert opinions are unfounded and should be excluded as they

would not be helpful to the Court in resolving this case. The Court disagrees.

As to Plaintiff's expert, although his prior court expert testimony has been focused on accident reconstruction, that does not mean he is unqualified to offer expert testimony on the use of force in this case. The record reflects that his experience includes 39 years as a law enforcement officer with both the Tucson Police Department ("TPD"), and the Tohono O'odham Nation Police Department after he retired from the TPD. Fuentes is a firearms instructor at the Southern Arizona Law Enforcement Training Center and the Arizona Peace Officer Standards and Training Board; he has been certified as a firearms instructor for 34 years. The duties of firearms instructors include analyzing police-involved shootings in Tucson, and determining whether changes in training are needed based on those evaluations; Fuentes has been involved in hundreds of these analyses throughout the years. As part of his law enforcement duties, Fuentes has received, and continues to receive, training on the proper use of deadly force in law enforcement. The Court finds that Fuentes is qualified to offer expert testimony in this case, and therefore Defendant's motion to exclude Fuentes as a "use of force" expert is denied.

As to Defendant's expert, although he did rely in part on Tidwell's recitation of the events surrounding the shooting, the record reflects that he also reviewed a large amount of additional relevant information in forming his opinion. For example, Callanan also reviewed the following information to reach his opinion: video footage of the incident, deposition transcripts of local law enforcement witnesses, the Cochise County Sheriff's Incident Report, the Douglas Police Department Incident Report, hundreds of photographs of the scene and various investigations, audiotapes of witness interviews,

Cochise County Counsel's Declination of Prosecution, scene drawings, U.S. Border Patrol Policy, Department of Homeland Security Use of Deadly Force Policy, and Agent Tidwell's training history. In addition, Callanan has decades of experience in law enforcement, training other law enforcement officers, and has been recognized and has testified as an expert on the use of deadly force by law enforcement officers in both state and federal court. As the Court finds that Callanan can properly offer expert testimony in this case, Plaintiff's motion to exclude Callanan's expert testimony is denied.

### **Defendant's Motion to Exclude Fuentes's Supplemental Expert Report**

Defendant argues that Plaintiff's expert (Fuentes) improperly submitted a supplemental expert report that should be excluded from this case. Defendant points out that Fuentes initially submitted his expert report on 5/7/14, but only after Defendant deposed Fuentes on 10/8/14, Fuentes improperly submitted a supplemental expert report on 10/14/14. Defendant argues that such a supplemental expert report post-deposition is improper because the supplement was not necessitated due to new information; rather, Defendant argues that the supplement was based on Fuentes's post-deposition examination of the scene of the shooting which has been in issue and available for examination since 2012. As such, Defendant argues that the supplement is improper as it is based on information available to Fuentes at the time of his 5/7/14 report, and should therefore be excluded.

Plaintiff argues, however, that Fuentes's supplemental report was necessitated by Defendant's delayed and incomplete disclosures prior to Fuentes's original expert report, and then Defendant's thorough and complete disclosures after Fuentes issued his original

expert report. For example, Plaintiff stresses that although it requested all relevant documents from Defendant concerning the shooting early in the litigation, it only received a total of 8 pages of federal investigation documents prior to Fuentes's initial report. However, subsequent to the initial report, Plaintiff eventually received over 1000 pages of additional disclosures from Defendant (including the lengthy Critical Incident Report); recordings of interviews of alleged witnesses to the shooting; and numerous depositions based on these new disclosures occurred as well. As such, in light of all this new information received after the initial expert report, a supplemental expert report was necessary from Fuentes. The Court finds that the supplemental expert report is proper, and therefore Defendant's motion to exclude it is denied.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the parties' motions in limine (Docs. 84, 85, 86) are denied.

## TRIAL DATES AND RELATED ISSUES

The Court notes that it has also reviewed the parties' Joint Proposed Pretrial Order ("PTO"). At this time, the Court has the following dates available for the trial in this case: 6/8/15; 6/15/15; 7/13/15; and 7/20/15. The parties shall consult with each other, and shall file a notice with the Court by 2/19/14 informing the Court what date is mutually agreeable for the parties. If none of these dates work for the parties, by 2/19/14, the parties shall provide the Court with four mutually agreeable trial dates that start on a

Monday (the earliest dates the Court is available for trial start in June of 2015).  Once a trial date is chosen that works for the parties and the Court, the Court will send out a Pretrial Order adopting the trial date, setting a pretrial conference on the Thursday (at approximately 1:30 p.m.) immediately before the trial date, and will include other instructions related to trial.  The Court has attached a sample pretrial order that may be helpful for planning purposes.

On page 47 of the PTO, it appears that the Government objects to paroling in several of Plaintiff's witnesses as they were not made sufficiently available for deposition during discovery.  However, IT IS ORDERED that the Government may still depose these witnesses prior to trial, and Plaintiff shall make these witnesses available for depositions (if the Government still wants to depose them) at the Douglas Port of Entry at least 30 days before trial.  The Government's objection is overruled, and these witnesses shall be paroled in for trial.

Lastly, the Court notes that the Government estimates that the trial will last 5 days, but the Plaintiff estimates that the trial will last 10 days.  As to this wide gap in the estimated length of trial, the Court (and presumably the parties) would like the trial to proceed as smoothly and efficiently as possible.  The Court's sample pretrial order (attached) encourages the parties to streamline the process as much as possible.  In reviewing the PTO, for example, it appears that Plaintiff lists numerous witnesses who will testify about the loss and sadness the family has suffered upon the death of Carlos LaMadrid.  However, it appears that the sheer number of people testifying to this issue is excessive and cumulative; to the extent possible, Plaintiff should attempt to prioritize and

limit the number of witnesses who will be testifying on the same issues.

Dated this 11th day of February, 2015.

                                    Honorable James A. Soto
                                    United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| ***,<br><br>            Plaintiff,<br><br>vs.<br><br>***,<br><br>            Defendant. | No. CV ***-TUC-JAS<br><br>**ORDER** |

IT IS HEREBY ORDERED as follows:

(1) The Pretrial Conference shall be held on *** at *** in Courtroom 6A. Counsel for the parties shall personally appear in Court at the Pretrial Conference. After reviewing the parties' pretrial filings, the Court may find that the *** pretrial conference is unnecessary; if this occurs, the Court will issue an Order vacating the pretrial conference.

(2) The Bench Trial shall begin on **\*\*\*** at *** in Courtroom 6A. Typically, trial days begin at 9:30 a.m. and end at 5:00 p.m. There is one morning recess, lunch, and one afternoon recess. The trial will continue each consecutive weekday until the trial concludes. The parties have indicated that trial will last *** days.

(3) The parties shall prepare at least four exhibit binders for trial that contain all the exhibits that are stipulated for admission by the parties (i.e., one for the Court, one for witnesses, one for counsel representing each opposing party or group of parties, and one for themselves).

1  The parties shall prepare at least four exhibit binders for trial that contain all the exhibits that
2  are unstipulated. The parties shall have these exhibit notebooks completed and give them
3  to the Courtroom Deputy in the morning on the first day of trial. *See* Attachment
4  (Instructions for marking and submitting exhibits, exhibit lists, and witness lists for trial).
5  The parties shall contact the Court's Courtroom Deputy (Tiffany Dame-#520-205-4682) if
6  they have additional questions regarding organizing exhibits, or if they would like to
7  schedule a time to view the Courtroom and to test the Courtroom's equipment prior to trial.
8  Likewise, to the extent the parties may use depositions at trial, the parties shall prepare at
9  least four stipulated deposition binders for trial and four unstipulated deposition binders for
10 trial. *See id.* All of the binders must be accompanied by a Table of Contents; any exhibits
11 or depositions must be indexed with tabs that protrude from the documents and shall
12 correspond to the Table of Contents. The parties are strongly encouraged to thoroughly
13 consult with each other such that as many exhibits and depositions as possible are stipulated
14 to be admitted at trial. The parties' failure to specifically seek, obtain, and be willing to
15 stipulate to the admission of evidence at trial may result in sanctions especially in light of the
16 fact that consistent objections to evidence at trial drastically expands the time that the Court
17 and the parties must expend on the trial. To the extent the parties are unable to stipulate to
18 admission after exhausting all reasonable efforts to obtain stipulations, the parties should be
19 prepared to thoroughly explain why they could not stipulate to admission, and each side
20 should be able to thoroughly explain why a particular piece of evidence should or should not
21 be admitted in the midst of trial. The Court notes that to the extent certain issues could have
22 and should have been specifically raised in timely motions in limine, such issues may be
23 deemed untimely or otherwise waived if they are raised by the parties at trial.
24 (4) The parties' proposed joint pretrial order is adopted as the final pretrial order of the Court
25 (hereinafter, the "PTO") to the extent consistent with this Order, previous Orders, and any
26 future Orders impacting the bench trial in this case. To the extent the parties have summarily
27 listed objections (i.e., foundation, hearsay, Rule 403, etc.) to evidence listed in the PTO that
28 were not included in timely motions in limine, or have briefly raised issues that were not

1  included in timely motions in limine, any such objections or issues will be ruled on as
2  deemed necessary as they arise in the midst of trial. The parties are warned that to the extent
3  such issues could have and should have been specifically raised in timely motions in limine,
4  such issues may be deemed untimely or otherwise waived if they are raised by the parties at
5  trial. NO WITNESS OR EXHIBIT, OTHER THAN THOSE SPECIFICALLY LISTED IN
6  THE PTO AS ADOPTED AND AMENDED BY THE COURT, MAY BE CALLED AT
7  TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS
8  ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R.
9  Civ. P. 16(e). FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY
10 BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE
11 DISMISSAL OF THIS ACTION WITH PREJUDICE OR ENTRY OF DEFAULT, ON
12 ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES
13 NON-COMPLIANCE WITH THIS ORDER.